UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11414-RWZ

NUANCE COMMUNICATIONS, INC.

v.

VLINGO CORP.

ORDER REGARDING CLAIM CONSTRUCTION

April 2, 2010

ZOBEL, D.J.

## I. Introduction

Plaintiff Nuance Communications, Inc. (hereinafter "Nuance"), alleges that defendant Vlingo Corp. (hereinafter "Vlingo") infringed United States Patent No. 6,766,295 (the "'295 Patent"), an "Adaptation of a Speech Recognition System Across Multiple Remote Sessions with a Speaker." In their respective Markman briefs, the parties disagreed as to the construction of ten terms in the '295 Patent; six disputed terms were agreed upon at the hearing, and four are left for the court to construe. The court's construction follows.

## II. Legal Standard

The claims of a patent define the invention. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). The construction of patent claims is a matter of law for the court to decide. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).

In construing patent claims, "the words of a claim are generally given their ordinary and customary meaning;" namely, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1312-13 (Fed. Cir. 2005) (internal citations omitted).

Where the ordinary meaning is not apparent, the court looks to the patent's specification and the prosecution history, which may include evidence of the inventor's and patent office's understanding of the patent. Phillips, 415 F.3d at 1315-17. The presumption that courts are to accord words their ordinary meaning may be overcome only if the patent specification or prosecution history "clearly and deliberately set[s] forth" a different meaning. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1363 (Fed. Cir. 1999).

Now having considered the parties' written submissions as well as the arguments of counsel at hearings held on March 17-18, 2010, I construe the claim terms as follows:

## III.  Claim Construction and Discussion

### A.  Agreed Terms

| Patent Term | Agreed Construction |
| --- | --- |
| "speech recognition system" | "A device or combination of devices, which could include general-purpose computers, special-purpose computers, or dedicated hardware circuits, and the software thereon, that recognize speech" |
| "sample" | "A single item or items from a larger whole or group" |
| "speaker" | "The person who is doing the speaking" |

| | |
|---|---|
| "remote session" | "A session between devices in which the input voice device is at a different location from the portion of the speech recognition system that recognizes the speech" |
| "statistics" | "A collection of data" |
| "telephone caller" | "The person making a telephone call" |

### B. Disputed Terms

#### 1. Term 1: "Incorporating the Sample Into" ('295 Patent, Claim 1(d))

| Term | Court's Construction |
|---|---|
| "... incorporating the sample into the speech recognition system ..." | "... taking into or including the sample in the preexisting speech recognition system ..." |

In construing this claim, I turn first to the full text of the claim at issue:

> What is claimed is [a] method of adapting a speech recognition system, wherein the method comprises steps of ... modifying the speech recognition system by <u>incorporating the sample into the speech recognition system</u> thereby forming a speaker-specific modified recognition system.

'295 Patent, Claim 1(d) (emphasis added).

The nub of the dispute here is how to construe the word "incorporating." Vlingo contends that "incorporating" means that the sample is "tak[en] into or includ[ed]" in a "preexisting speech recognition system." Nuance contends that the speech recognition system may "incorporate" the speech sample into the system by using the sample to adapt components of the system, as opposed to merely selecting profiles from a pre-existing speech recognition system.

3

Examination of the claim's prosecution history is illuminating here. Nuance amended the language of the claim during the prosecution. The claim was amended from "... modifying the speech recognition system according to the sample thereby forming ..." to "modifying the speech recognition system <u>by incorporating</u> the sample <u>into the speech recognition system</u> thereby forming ...." Docket # 65, Ex. 2, Office Action, Patent Amendment and Response at 2. This claim limitation describes <u>how</u> the modification of the speech recognition is to be performed — that is, by incorporating the sample into the speech recognition system. Although the claim language is not altogether clear, I accord "incorporating" its plain meaning and conclude that "incorporating into" means "taking into or including in the preexisting speech recognition system."[1]

### 2.     Term 2: "Identification of a Speaker" ('295 Patent, Claim 1(a))

| Term | Court's Construction |
|---|---|
| "... an identification of a speaker ..." | "... identifier of the source of speech, which can be obtained in any way ..." |

---

[1] Vlingo makes much of Nuance's statements made during the prosecution to avoid a prior art reference (Bessling). Nuance explained that its technology differed from Bessling in that the Bessling technology did not "modify" or "actually incorporate[]" the "user sample" into an existing acoustic model, but rather the sample in Bessling was used for "comparative purposes." Docket # 65, Ex. 2, '295 Patent, Amendment and Response to Office Action at 11-12. During prosecution, Nuance further argued that Bessling selects an "adaptation profile [that] best fits the model improvement data (input user sample)," and that by so doing, the speech recognition in Bessling is "based upon" the "sample" of speech. Thus, Vlingo contends that Nuance's system cannot merely be adapting the system "based on" a sample of speech. The Bessling history is of limited probative value; the question of the construction of "modifying ... by incorporating into" remains.

4

The parties agree that one stated goal of the patent is to provide "[a] technique for adaptation of a speech recognizing system across multiple remote communication sessions with a speaker." Docket # 65, Ex. 1, '295 Patent Abstract. Precisely how the speech recognition system identifies the speaker is fundamental to the patent. Both parties agree that the technology is a speech recognition system designed to improve speech recognition by modifying an acoustic model based on a speaker's speech during multiple interactive remote sessions. Id. Vlingo contends that the individual speaker must be identified by voice. Nuance explains that the technology identifies the source of speech through various unique characteristics; either from a voice sample (e.g., the caller's voice), or from various other sources (e.g., pin, account number, caller ID). See Docket # 65, Ex. 1, '295 Patent, col. 4, ll. 1-10. The issue, then, is whether the speech recognition system has to identify a particular speaker by his or her voice, or can do so by means of another source.

Nothing on the face of the claim specifies that the speech recognition system must identify a particular speaker rather than the source of speech, and the specifications explicitly teach otherwise. Moreover, Vlingo's proposed construction, an "identifier that exclusively identifies a speaker" (emphasis in original) is both ambiguous and overly narrow; I therefore I decline to adopt it.

### 3. Term 3: "Cluster of Speakers" ('295 Patent, Claim 16(a))

| Term | Court's Construction |
|---|---|
| "... obtaining an identification of a cluster of speakers ..." | "... obtaining an identification of a group of speakers without limitation as to how the identification is obtained ..." |

The dictionary defines "cluster" to mean "group."  See Webster's II New College Dictionary (2001) (defining "cluster" as "[a] group of the same or similar elements ....").

As described in the specification, the speech recognition device may identify the speech of a group of speakers based on various voice features, including the speaker's "accent (or lack thereof)" or "telephone area code."  Docket # 65, Ex. 1, '295 Patent, col. 7, ll. 57-65; col. 8, ll. 2-4.  Nothing in the plain language of the claim suggests that the identification of a cluster must be "based on the sound of their voice[s]."  Vlingo provides no support for this reading, nor is it fairly inferred.  Accordingly, I construe the term to mean "obtaining an identification of a group of speakers without limitation as to how the identification is obtained."

### 4.  Term 4: "Forming a Speaker-Specific Modified Acoustic Model" ('295 Patent, Claim 4)

| Term | Court's Construction |
|---|---|
| "... forming a speaker-specific modified acoustic model ..." | "... resulting in an acoustic model that is modified based on the speaker's speech ..." |

In order to construe this dependent claim, one must first examine the full text of the claim:

> The method according to claim 1 wherein the step of modifying the speech recognition system comprises a step of <u>modifying an acoustic model thereby forming a speaker-specific modified acoustic model</u> and wherein the step of storing a representation of the speaker-specific modified speech recognition system comprises a step of storing a representation of the modified acoustic model.

'295 Patent, Claim 4 (emphasis added).

The conflict between the parties arises over the meaning of the word "forming." Vlingo contends that when the speech recognition system is modified, the result is a <u>new</u> acoustic model, namely, the speaker-specific modified acoustic model. Nuance contends that the "speaker-specific modified acoustic model" is the model that is "formed" as a result of "modifying an acoustic model." In essence, the parties disagree as to whether there are one or two acoustic models. Vlingo contends there are two — the "speaker-specific modified acoustic model" and, by implication, the "speaker independent" acoustic model. Nuance contends that there is just one model — the one that is "form[ed]" by modifying the existing model. In support of its contention, Vlingo points to language in the patent's detailed description of a preferred embodiment, which states that "the modified model itself ... can be used to modify a pre-existing acoustic model or that can be used to modify incoming acoustic speech." '295 Patent, col. 3, ll. 24-25; col. 5, ll. 7-30.

Vlingo's construction is not fairly inferred from the claim term or the description of the preferred embodiment. The claim references "modifying" the existing model, thereby "forming" a new one. <u>See</u> <u>id.</u> at Claim 4. The detailed description of a preferred embodiment refers to "modifi[cation] of a pre-existing acoustic model." Nothing in the claim suggests that the pre-existing model must exist separately. Accordingly, I adopt Nuance's construction.

**IV.    Conclusion**

In summary, the court construes the disputed claim terms as follows:

| Patent Term | Court's Construction |
| --- | --- |
| "incorporating the sample into the speech recognition system" | "... taking into or including the sample in the preexisting speech recognition system ..." |
| "identification of a speaker" | "... identifier of the source of speech, which can be obtained in any way ..." |
| "obtaining an identification of a cluster of speakers" | "... obtaining an identification of a group of speakers without limitation as to how the identification is obtained ..." |
| "forming a speaker-specific modified acoustic model" | "... resulting in an acoustic model that is modified based on the speaker's speech ..." |

    April 2, 2010                            /s/Rya W. Zobel
       DATE                                  RYA W. ZOBEL
                                           UNITED STATES DISTRICT JUDGE