**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NUANCE COMMUNICATIONS, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>VLINGO CORP.,<br><br>        Defendant. | Civil Action No. 1:09-cv-11414-RWZ |

**PLAINTIFF NUANCE COMMUNICATIONS, INC.'S TRIAL BRIEF**

Pursuant to Local Rule 16.5 Plaintiff Nuance Communications, Inc. ("Nuance") respectfully submits the following trial brief. Pursuant to the Court's pretrial order of July 6, 2011 ("Pretrial Order") Nuance will file its proposed voir dire questions by July 15, 2011, and its request for instructions and proposed questions to the jury on special verdict by July 21, 2011. (Dkt. No. 192)

**I. INTRODUCTION**

    **A. Issues Remaining**

Pursuant to the agreements reached at the pre-trial conference in this matter, as reflected in the Pretrial Order, the only issues remaining in this case, all of which relate to patent law are: Whether (1) defendant infringed certain claims of plaintiff's '295 patent; (2) any infringement is willful; and (3) the '295 patent is invalid for anticipation (35 U.S.C. § 102) obviousness (35 U.S.C. § 103) and lack of written description (35 U.S.C. § 112).

Vlingo Corporation's ("Vlingo") trial brief, which it prepared before the issues were narrowed at the pre-trial conference, advances a number of irrelevant theories that have no

bearing on the issues remaining in dispute.  For example, Vlingo's trial brief discusses Vlingo's views on (1) Nuance's alleged motives for filing this lawsuit, (2) other lawsuits between the parties, (3) settlement negotiations between Vlingo and Nuance, and (4) patent enablement.  None of these items are relevant to issues in dispute in this case, and Vlingo inflammatory arguments on these issues have no place in the upcoming trial or in Vlingo's trial brief.

  **B. Background**

    1. <u>U.S. Patent No. 6,766,295 ("the '295 patent")</u>[1]

This is a patent infringement suit involving Nuance's '295 patent, entitled "Adaptation Of A Speech Recognition System Across Multiple Remote Sessions With A Speaker."  The '295 patent discloses a speech recognition system that allows multiple users connecting to a system via remote devices to access customized speech recognition "models" that can improve the accuracy of the system.  For example, in order to improve speech recognition accuracy in a multi-user remote environment, the system can adapt a basic acoustic model based on the specific source of speech (such as a unique mobile phone number) connecting to the system.  Unlike the prior art, this adaptation does not require a lengthy up-front training session, but rather occurs over time as multiple samples are collected from that speech source over multiple remote sessions.  The adapted model for each speech source is stored so it can be used and further adapted in future sessions that the system identifies as coming from the same source of speech.  The speech recognition system is centrally located away from where the devices or speakers are located.  This minimizes the equipment, storage, processing power, etc. needed on the device or speaker side of the connection and allows for a variety of ways to connect to the core speech recognition system.  Once a remote session is established, the system identifies the

---

[1] This summary is only illustrative and not a comprehensive description of all the aspects of the '295 invention nor all the differences between the '295 patent and the prior art.

source of the speech (i.e., the specific device or user accessing the system) and then determines the appropriate speech model or models to use (i.e., one identified with that source of speech, and/or the appropriate cluster to which it belongs).  The '295 patent also claims adapting speech according to clusters, instead of individual devices or speakers.

        2.    The Parties

Nuance is the world's leading provider of speech recognition technology.  Generally, speech recognition technology allows people to interact with computers or other devices by speaking commands, instead of using a keyboard, mouse, or other physical interface.  Speech recognition technology is used in everything from cars that can accept voice commands, to dictation software for computers, to auto-dialers on mobile phones.

Nuance has become the market leader in speech recognition technology by investing heavily in its own research and development, and by acquiring and integrating technology from other innovative companies.

Up until about September 2005, the name of Nuance was "ScanSoft," and Michael Phillips was its Chief Technology Officer.  John Nguyen was in charge of ScanSoft's network speech recognition products.  One of the projects Mr. Phillips was spearheading at Nuance was called "Mobi"—a Nuance speech recognition product designed for mobile phones.  Before the development of Mobi was complete, both men became unhappy with what they perceived as the slow pace of support for their projects, became disgruntled and left Nuance in June of 2005.  They then founded a rival company named "Mobeus" to compete with Nuance's "Mobi" product.  Mobeus has since changed its name to Vlingo.

While Mr. Phillips was still employed by Nuance and developing the Mobi project, his responsibilities included evaluating certain Nuance patents.  One of those patents, U.S. Patent No. 6,766,295, is the subject of this lawsuit.  After acquiring a detailed understanding of this

patent, Mr. Phillips drafted a report entitled "Nuance and SRI speech patent analysis" that summarized the initial results of an R&D analysis of the '295 patent. The '295 patent discloses and claims the use of certain adaptation techniques for use in remote speech recognition systems (such as ones used on mobile phones). Thus, Mr. Phillips was fully familiar with the invention claimed in the '295 patent and its application to remote speech recognition systems. In fact, Mr. Phillips was familiar with Nuance's entire patent portfolio, as he was the "energizing force" behind Nuance's Patent Committee, had input into corporate-level decision-making on intellectual property issues, and was involved in numerous patent prosecution and litigation matters.

After Mr. Phillips left Nuance, and unbeknownst to Nuance at the time, Mr. Phillips continued working on the mobile speech recognition technology developed at Nuance. He did not make this work public, however, until June of 2006, after his one-year non-compete agreement with Nuance expired. He then announced that he was teaming up with John Nguyen to found Mobeus and commercialize what he admitted was a "Mobi-like project" designed to compete in the same "space" as Mobi.

Initially, Vlingo turned to Nuance for the enabling technology it needed to create its "Mobi-like project." Nuance initially provided Vlingo with its speech recognition engine under the terms of an evaluation agreement, not yet knowing that Vlingo intended to use this technology to compete against Nuance. Indeed, the evaluation agreement made clear that the use of Nuance's speech recognition technology was solely for Mobeus/Vlingo's internal evaluation purposes, and could not be used for any commercial purpose. At the end of 2006, Nuance terminated the evaluation agreement because a dispute emerged over how Vlingo could use the Nuance technology going forward. In its termination letter, Nuance expressly reminded Vlingo

that Nuance holds numerous patents on its technology, and that the unauthorized use of this technology infringes Nuance's intellectual property rights. Despite this warning, Vlingo did not get an opinion of counsel regarding any of Nuance's patents, including the '295 patent, even though Vlingo itself identified the '295 patent as one that it might need to acquire.

After Nuance terminated its evaluation agreement with Vlingo, Vlingo asked IBM if it would modify its speech recognition engine to mimic the Nuance engine. IBM agreed to do so, and Vlingo began using the modified IBM engine.

Shortly after Vlingo replaced the Nuance engine with the modified version of the IBM engine, Vlingo began pitching its product to potential customers, generally in competition with Nuance. Vlingo's sales pitches and marketing materials placed special emphasis on Vlingo's ability to do adaptation as described in the '295 patent. Vlingo even claimed that this adaptation technology was a "New Technology" Vlingo created.

When Nuance learned that Mobeus/Vlingo intended to use Nuance's adaptation technology to compete against Nuance, Nuance filed this patent infringement lawsuit.

At the end of 2008, Nuance acquired parts of IBM's speech technology, including the IBM engine. Consequently, Nuance became the assignee of Vlingo's contract with IBM for use of the IBM engine. Nuance did not, at that point, grant Vlingo a license to any of its patents or otherwise modify the terms of the IBM/Vlingo contract.[2]

Vlingo then contracted with AT&T to modify an existing AT&T speech recognition engine to replace the IBM engine. As with the IBM engine, Vlingo needed to modify the AT&T engine in order to run the Vlingo software and practice Nuance's inventions. Vlingo has

---

[2] Vlingo has claimed that its agreements with IBM (which have since been assigned to Nuance) permitted Vlingo to use Nuance's patented technologies. This is nonsense. Vlingo's

2461157                                             5

admitted that the relevant functionality of it's software, both IBM and AT&T, has remained substantially unchanged since the first version of its software. The Vlingo product thus infringes Nuance's patents, on both the modified IBM and AT&T engines.

## II. Issues Remaining In This Case

### A. Infringement

Nuance is asserting the following claims against Vlingo Corporation ("Vlingo"): 1, 2, 5, 6, 9, 10, 16, 19, 25, 30, 31, 34, 37, 38, 45, 47, 51. Nuance is accusing the Vlingo system in its entirety as set forth in the expert report of Dr. Martin Walker. The accused system includes (but is not limited to) Vlingo clients, servers, databases, and storage, and includes Vlingo functionality marketed under third-party brand names (e.g., Yahoo! oneSearch). The Vlingo system is accused in all of its versions that have existed since the inception of Vlingo, and includes Vlingo's test and experimentation platforms regardless of whether these platforms are included or scheduled to be included in a public deployment. Nuance asserts literal infringement with respect to each and every asserted claim. *See Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001). Nuance also asserts infringement based on the doctrine of equivalents with respect to each and every asserted claim. *See Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1369 (Fed. Cir. 2010). Additionally, Nuance notes that Vlingo's assertion of prosecution history estoppel as a defense to infringement by equivalents is wrong because (1) it relies on an incorrect interpretation of the claim terms as construed by this Court (Dkt. No. 77); and (2) prosecution history estoppel does not apply at all in this case since the nature, types or means of "forming a speaker-specific modified speech recognition system," "incorporating the sample into the speech recognition system" and "obtaining the identification

---

agreements with IBM agreements expressly disclaim any warranty of non-infringement, and does not grant any licenses to patents.

of a speaker" were not factors in the allowance of the claims and were "merely tangential" to the prosecution. *See Funai*, 616 F.3d at 1369.

At a broad level, the claims can be broken down into two main categories: method and system claims involving per-speaker adaptation, and method claims involving adaptation for clusters of speakers. Vlingo infringes both categories of claims as set forth in detail in the expert report of Dr. Martin Walker. Moreover, as will be shown at trial, Vlingo has essentially admitted in deposition testimony that it performs all of the steps of the '295 patent claims. *See Wenger*, 239 F.3d at 1231.

Vlingo is also contributing to the infringement of, and/or inducing the infringement of the '295 patent by, among other things, making, using selling, and/or offering to sell, within the territorial boundaries of the United States, products and services that are covered by one or more claims of the '295 patent with knowledge of, or at the very least a willful blindness to, such infringement. Such products include, but are not limited to, the products and services Vlingo is supplying for all versions of Yahoo! oneSearch. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *see Global-Tech Appliances, Inc. v. SEB S.A.*, No. 10-6, slip op. at 9-10 (U.S. May 31, 2011).

### B. Vlingo Willfully Infringed

The evidence will show that Phillips used Nuance patented technology—including the '295 patent—in developing Vlingo products. The evidence will also show that Phillips knew of the '295 patent due to Phillips' work at Nuance and was aware of its application to Vlingo's and Nuance's speech recognition technology. Vlingo develops and sells speech recognition products which infringe the '295 patent and incorporate the '295 patent's technology. The evidence will also show that all Vlingo products and services offered to the public since the founding of Vlingo

infringe the '295 patent as well as products and services used, tested, operated, or under development at Vlingo.

Vlingo's infringement is willful because Vlingo acted despite an objectively high likelihood that its actions constituted infringement of the '295 patent and the risk of infringement was known, or so obvious that it should have been known, to Vlingo when it was founded. It was further made aware of such risk at various times thereafter, including by the filing of this lawsuit on June 16, 2008. *See In re Seagate Tech., L.L.C.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

### C. Validity Of The '295 Patent

Vlingo is also claiming that the '295 patent is invalid. Vlingo's expert's report relies on a handful of references in support of this opinion. But most of Vlingo's invalidity theories were reviewed by the PTO during the '295 patent's initial prosecution, and the PTO granted the patent fully aware of these theories. *See Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("When the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution, that burden becomes particularly heavy."). Thus it is unlikely that arguments based on them would support a finding of invalidity, particularly in the face of Vlingo's burden to establish invalidity by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, No. 10-290, slip op. (U.S. June 9, 2011). Moreover, Vlingo's remaining theories cannot overcome the presumption of the '295 patent's validity. *See Impax*, 545 F.3d at 1314.

### III. Objections To Fed. R. Civ. P. 26(a)(3) Disclosures

The parties are currently in the process of negotiating regarding their objections to each parties disclosures under Federal Rule of Civil Procedure 26(a)(3). The parties will file its agreed to exhibits and objected to exhibits prior to the commencement of trial.

Dated: July 11, 2011

Respectfully submitted,

Nuance Communications, Inc.,

By its attorneys,

*/s/ Gunnar Gundersen*
Gunnar Gundersen

Jonathan Kagan, *pro hac*
Gunnar Gundersen, *pro hac*
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

David McPhie, *pro hac*
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, California  92660
(949) 760-0991

Thomas F. Maffei (BBO 313220)
Scott McConchie (BBO 634127)
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110
(617) 542-9900

**CERTIFICATE OF SERVICE**

I, Gunnar Gundersen, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 11, 2011.

                                            */s/ Gunnar Gundersen*
                                            Gunnar Gundersen