# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>VLINGO CORP., )<br><br>Defendant. ) | Civil Action No. 1:09-cv-11414-RWZ |

## PLAINTIFF NUANCE COMMUNICATIONS, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Nuance Communications, Inc. ("Nuance") moves for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50(b).[1]  Nuance brings this motion because no reasonable jury could have found that Vlingo Corporation ("Vlingo") did not infringe U.S. Patent No. 6,766,295 ("the '295 patent") based on the evidence presented at trial.

The '295 patent broadly claims a method and apparatus for per-user and cluster-based adaptation of a speech recognition system, which modifies the system based on the speech of individual users or groups of users.  Claim 1, 30, 45 and 51 are directed to per-user adaptation (*i.e.*, adapting the speech recognition system to learn the speech of a user):

> 1. A method of adapting a speech recognition system, wherein the method comprises steps of:
>
>> a.   obtaining an **identification of a speaker;**
>> b.   **obtaining a sample** of a speaker's speech during a first remote session;
>> c.   **recognizing the speaker's speech** utilizing the speech recognition system during the first remote session;
>> d.   modifying the speech recognition system by **incorporating the sample** into the speech recognition system **thereby forming a speaker-specific modified** speech recognition system;
>> e.   **storing a representation** of the speaker-specific modified speech recognition system in association **with the identification of the speaker**; and
>> f.   **using the representation** of the speaker-specific modified speech recognition system to recognize speech during a subsequent remote session with the speaker.

Ex. A ('295 patent) at 11 (Emphasis added).

Claim 30 does not materially differ from claim 1, and claim 45 is an apparatus that implements the method of claim 1.  *Id*. at 12.  Claim 51 materially differs from claim 1 primarily in that element (b) requires "obtaining an **utterance**," as opposed to a sample.  *Id*.  Vlingo advanced identical non-infringement arguments for all of these claims.

At trial, the operation of Vlingo's accused products was undisputed.  The user calls up the Vlingo system, which identifies the source of speech using a unique identifier for each phone called "Device ID" or "IMEI" (*i.e.*, an identification of a speaker is obtained).  Ex. B (8/3/11 (1)

---

[1] This motion is filed concurrently with Nuance's motion for a new trial.  Many of the arguments in Nuance's motion for new trial also apply here, but for purposes of efficiency will not be repeated here.

TT) at 33:4-9 (Phillips).  The user then speaks into the phone.  The user's speech is recorded and transmitted to the Vlingo system (*i.e.*, a sample or utterance of the speaker's speech is obtained). Ex. C (8/4/11 (2) TT) at 5:19-9:11 (Cohen).  The Vlingo system stores the recording of the user's speech in association with the Device ID and uses the IBM or AT&T speech recognition systems to recognize the speaker's speech (*i.e.*, recognizing the users speech). Ex. D (8/04/11 (1) TT) at 68:8-14 (Cohen).  After this call, Vlingo will use tools to reduce the sample or utterance down to mathematical or statistical representations that the system can recognize and adapt the statistical acoustic models by incorporating this data (*i.e.*, incorporating the sample or utterance thereby forming a speaker-specific model).  Ex. E (7/22/11 (1) TT) at 48:24 (Walker).  This updated statistical model is stored in association with the identification of the speaker (*i.e.*, storing the speaker-specific model).  Ex. U (7/25/11 (1) TT) at 13:22-14:4 (Walker).  During a subsequent call with this same user, Vlingo uses this modified model to recognize the speaker's speech (*i.e.*, using the speaker-specific model).  Ex. K (8/5/11 (1) TT) at 51:10–15 (Cohen).

Claim 16 materially differs from claim 1 only in that it requires "obtaining an identification of a cluster of speakers."  Again, the dispositive facts are undisputed.  Both parties agree – and Nuance proved at trial – that Vlingo clusters users according to the specific platform (*i.e.*, Blackberry, iPhone, Android or Symbian) and builds platform-specific acoustic models. Ex. K (8/5/11 (1) TT) at 48:14–57:3-7 (Cohen).  Similarly, Vlingo clusters users according to particular dialects (*e.g.*, U.K. English vs. U.S. English) and builds models for each particular dialect.  Ex. FF (7/28/11 (2) TT) at 32:9–35:11 (Wang).  In other words, the Vlingo system performs the same process discussed above for an individual user, except that it obtains an identification of a cluster of users and builds a model specific to that cluster.

Faced with overwhelming evidence that its products infringe the patent claims, Vlingo's non-infringement arguments consisted entirely of arguing that Vlingo did not practice certain alleged "limitations" that ***do not actually exist***.  For example, Vlingo argued non-infringement based on the theory that the '295 patent requires the direct identification of a particular speaker as opposed to a device associated with a speaker.  Yet the Court rejected this theory in its claim

construction order, expressly holding that the '295 patent required no such thing. Of course, the fact that Vlingo may not practice non-existent limitations does not provide Vlingo with a non-infringement defense. *See Moba v. Diamond Automation*, 325 F.3d 1306, 1313 (Fed. Cir. 2003) (no reasonable jury could find non-infringement based upon an alleged limitation that was not actually part of the patent). This Court should grant Nuance's motion because the undisputed evidence established that Vlingo practices every limitation of the asserted claims; whether Vlingo practices phantom elements of these claims is irrelevant.

## ARGUMENT

"The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000). Thus, a JMOL is "warranted when, viewing the evidence in the light most favorable to the non-moving party, 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.'" *Amgen v. F. Hoffman-La Roche*, 580 F.3d 1340, 1352 (Fed. Cir. 2009); *see also Down East Energy v. Niagara Fire Ins.*, 176 F.3d 7, 14 (1st Cir. 1999) (JMOL appropriate where "evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment"). After Vlingo rested and again at the close of all evidence, Nuance moved for a JMOL on all issues, including infringement; it renews that motion now in full. Ex. F (8/8/11 (1) TT) at 63:22–64:2; Ex. G (8/8/11 (Mtn. Hearing & Charge Conf.) TT) at 7:14–8:9; 19:20–20:11.

The issue of infringement is a two-step inquiry. "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). "[A] finding of infringement can rest on *as little as one instance* of the claimed method being performed during the pertinent time period." *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) (emphasis added).

The Federal Circuit has made clear that a Court should grant JMOL of infringement where an accused infringer's only non-infringement defenses are based on improper attempts to

add limitations to the asserted claims. *Moba*, 325 F.3d at 1313. In *Moba*, the district court had construed the relevant terms of the asserted claims during the *Markman* phase of the case, and yet the accused infringer argued at trial that the claims included an ***additional*** limitation that had not been included in the court's prior claim construction order. *Id*. The jury accepted this claim construction argument and rendered a verdict of non-infringement, which the district court sustained in the post-trial phase of the case. *Id*. The Federal Circuit reversed, holding that it was error to permit a verdict of non-infringement to stand based on a claim limitation that was effectively added to the claims via improper argument to the jury. *Id*. at 1313-14.

The Federal Circuit's reasoning in *Moba* applies equally here. Vlingo did not argue non-infringement based on some factual dispute regarding the operation of its product; there was no such dispute. Rather, Vlingo's four non-infringement defenses were based on its argument that the claims included certain limitations that its system did not practice. In other words, Vlingo argued that the jury should read different and non-existent limitations into the claims, and find no infringement because Vlingo did not practice these phantom limitations. Vlingo's improper theories do not, and cannot, constitute a "legally sufficient evidentiary basis" to support the jury's verdict of non-infringement. Therefore, Nuance is entitled to a JMOL of infringement.

A.   **Vlingo's Products Obtain "An Identification Of A Speaker" And Form A "Speaker-Specific Model".**

1.   The Evidence, Including that from Vlingo, Proved this Element.

Claim element 1(a) of the '295 patent requires that the speech recognition system obtain "an identification of a speaker." Ex. A ('295 Patent) at 11. During claim construction, the Court adopted Nuance's construction, that "an identification of a speaker" means an "identifier of the *source* of speech." Ex. H (4/2/10 Claim Const. Order) at 5 (emphasis added).

There is no dispute that Vlingo's speech recognition products identify the *source* of speech when performing speech recognition, albeit not always the particular individual speaker.

Nuance presented undisputed evidence that the Vlingo system uses the "VLSPEAKER" cookie or "Device ID" to identify the source of speech. Both versions 3.0 and 4.0 of Vlingo's

Speech Recognition Server HTTP interface, documents whose purpose is "to cover the HTTP interface to the vlingo Speech Server," explains in the section entitled "**Identifying the User**":

> **It is very important for the accuracy of a recognition that the server can identify the user. Without knowing who the user is, the recognition accuracy will suffer. The primary means of identifying a user is through the VLSPEAKER cookie (see section 4.1.1.1), which is used to uniquely identify both the user and the client device being used**.

Ex. I (Trial Ex. 87) at 7 (emphasis added); Ex. J (Trial Ex. 99) at 8.

In fact, Vlingo's expert, Dr. Jordan Cohen, stated on a number of occasions that Vlingo was not contesting that the Vlingo system obtains an identification of a speaker: "Well, the '295 patent specifically calls out caller I.D. as a possible way to identify the speaker . . . *we are not contesting the identification of the speaker*." Ex. F (8/8/11 (1) TT) at 8:21–10:8 (Cohen).

More particularly, the software code makes clear and both parties agree that the Vlingo product identifies the source device through a "Device ID" or "IMEI," and stores acoustic models with that ID. Ex. K (8/5/11 (1) TT) at 51:13–15 (Cohen) ("it stores, along with the recording, the identification of the instrument that was used to make the recording"); Ex. L (7/22/11 (1) TT) at 12:13–16 (Walker); Ex. B (8/3/11 (1) TT) at 33:4–9 (Phillips); Ex. M (Trial Ex. 10) at 3. Both parties also agree that Device ID is generally associated with a speaker, even if it does not always correctly identify one human being in particular because in certain situations a user may pass a phone to someone else. Ex. N (8/5/11 (2) TT) at 22:20-23:1; *id*. at 38:23-4.

Further, Vlingo's founders and engineers admitted during trial the device that the Vlingo system identifies is the "source of speech." Ex. O (1/6/11 Cerra Depo. Tr.) at 118:17-23 ("Q What is the source of the utterance? A. Audio. The source would be the microphone on the device. Q. The source is the device? A. I would say the device is what records the audio. So then from that perspective, yes, it is the source."); Ex. P (2/23/11 Thayer Depo. Tr.) at 44:13-24.

The undisputed evidence (and Vlingo's own expert) are thus in full accord: the Vlingo system satisfies the "identity of the speaker" limitation of the '295 patent.[2]

---

[2] The patent-in-suit foreshadows the use of proxies (such as Caller ID) for "identification of a speaker." Ex. A ('295 Patent) at 9 (Column 4, lines 4-6); Ex. N (8/5/11 (2) TT) at 25:17–22. Caller ID, just like Device ID, is

    2.    Vlingo Urged the Jury to Disregard the Court's Claim Construction.

Faced with the undisputed evidence that the Vlingo system obtains "an identification of a speaker," Vlingo argued to the jury a previously rejected claim construction argument:  that because Vlingo identifies only the source of speech (*i.e.*, the device) instead of the individual speaker, it does not practice the patent.  Vlingo disregarded the evidence, including that of its own witnesses, that Vlingo uses the device identification to identify source and as a proxy to identify the speaker.  Instead, Vlingo argued that the fact that Vlingo's system identified a device as "the source of speech" was insufficient to satisfy the "identification of a speaker" requirement:

> Q.    And why can't that be speaker specific?
> A.    As I pointed out, devices can have more than one speaker, and the device ID just doesn't have anything to do with speakers; it really has to do with a particular instrument.

Ex. C (8/4/11 (2) TT) at 24:22–25:1 (Cohen).  As Vlingo's counsel reiterated during closing argument, "What happens when my wife talks into it?  She – a model is not generated for her. . . So, here we have a circumstance, without question, where Vlingo does not generate a particular model per person."  Ex. Q (8/9/11 (1) TT) at 27:15–28:5.  In other words, Vlingo argued to the jury that it does not perform the limitation of speaker-specific because their system identifies devices rather than individuals, so it cannot generate unique models for each individual person. *Vlingo's argument fails because there is no requirement in the patent or the Court's claim construction that requires the identification of a particular speaker instead of the source of speech (i.e., device).  See Moba*, 325 F.3d at 1313.

To the contrary, this Court already rejected Vlingo's interpretation of the patent.  Specifically, Vlingo had argued during claim construction that the patent required the identification of a "particular speaker rather than the source of speech."  Ex. H (4/2/10 Claim Const. Order) at 5.  The Court expressly rejected Vlingo's argument as "both ambiguous and

---

a proxy used to identify the speaker in the Vlingo system.  Dr. Walker confirmed this.  Ex. S  (8/8/11 (2) TT) at 40:21-41:2.  Dr. Cohen, Vlingo's expert, conceded that the Vlingo system uses a Device ID as a proxy to identify the speaker.  Ex. N (8/5/11 (2) TT) at 34:21–24.

overly narrow" because the patent *did not* require exclusively identifying the speaker.  *Id.* Having clearly lost this argument, Vlingo again tried to argue that the '295 patent requires the identification of a particular speaker two days before trial, asking the Court change its claim construction so that the term "identification of a speaker" would require identification of individual speakers rather than devices because in certain situations a user might pass his cell phone around, thereby affecting the quality of the voice recognition.  Ex. T (7/16/10 Mtn. For Renewed Claim Constr.) at 5.  Once again, the Court rejected Vlingo's argument.

Having twice lost its effort to argue that the '295 patent requires the identification of a particular speaker, Vlingo nonetheless presented this argument to the jury, thus disregarding the Court's construction of the claim term "forming a speaker-specific modified acoustic model." Ex. C (8/4/11 (2) TT) at 24:22–25:1 (Cohen) ("a speaker-specific recognition system or a speaker-specific model must be a model that is ***specific to a person***").  And Vlingo emphasized this point during closing argument.  Ex. Q (8/9/11 (1) TT) at 27:15–28:5 ("Vlingo does not generate a particular model ***per person***") (emphasis added).  The Court's construction of the "forming" step, like its limitation of the "identification" step, does not require the system to identify or operate in a way that is "specific to a person" or "per person."  Rather, pursuant to the Court's construction, the "limitation" step is satisfied whenever a model is modified based on the speaker's speech; the Court construed the term as "resulting in an acoustic model that is modified based on the speaker's speech."  Ex. H (4/2/10 Claim Const. Order) at 6.  Vlingo's claim construction argument, urging the jury to disregard this Court's prior rulings, was improper.  *Moba*, 325 F.3d at 1313 (district court committed legal error where court allowed "the jury to add an additional limitation to the district court's construction").

Vlingo's expert acknowledged that the Vlingo system creates a speaker-specific model under the construction provided by the Court, testifying that "the kind of model you get depends on the kind of data you put in.  So, you can put an individual speaker data.  You get a speaker-dependent speaker adjusted model."  Ex. K (8/5/11 (1) TT) at 27:18–20; Ex. D (8/4/11 (1) TT) at 48:15-21 (Cohen) ("So, if you put data from one person in, you get a speaker dependent

model.").  In other words, by conceding that the Vlingo system identifies a speaker using a device, receives speech from that speaker, and then forms a modified model based on that speech, Vlingo has confirmed that its system practices the requirements of the '295 patent.

Moreover, Dr. Cohen's admission establishes that Vlingo's product infringes at least some of the time, even under his improper construction.  Specifically, there are some users who utilize the Vlingo system without ever passing their phone around (at least not initially). For these users, the system creates a speaker-specific model because, as Dr. Cohen admitted, if you put in data for a single speaker, you get a speaker-dependent model.  *Id.*  Because the amount of infringement is irrelevant, Vlingo's system infringes this element even using Dr. Cohen's improper construction.  *Lucent*, 580 F.3d at 1317 ("a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period").[3]

Nuance has presented undisputed evidence that the Vlingo system obtains "an identification of a speaker" by way of Device ID and forms a speaker specific model.  There is no legally sufficient basis for a reasonable jury to find otherwise.

### B.    Vlingo's Products Obtain "Samples Of A Speaker's Speech."

Claim element 1(b) requires that the speech recognition system obtain "a sample of a speaker's speech."  Ex. A ('295 patent) at 11.  The parties agreed that "sample" should be construed to mean "a single item or items from a larger whole or group."  Vlingo's speech recognition products perform this function.  Ex. H (4/2/10 Claim Const. Order) at 2.

There is no dispute that the Vlingo system obtains the portions of the speaker's speech that he or she speaks into the voice recognition system.  The software code confirms and both parties agree that the Vlingo system, using both the AT&T and IBM engines, will record only what the user dictates into a mobile device and transmit that recording to the Vlingo system.  *See, e.g.,* Ex. C (8/4/11 (2) TT) at 5:19-9:11 (Cohen).

For example, both Dr. Cohen and Dr. Walker were presented with a situation where a

---

[3] Nuance requested a jury instruction on this specific point (*see* Dkt. Nos. 339-1 & 350), but the Court did not ultimately provide such an instruction.

user walks into a bakery.  Ex. U (7/22/11 (1) TT) at 24:6-23 (Walker); Ex. K (8/5/11 (1) TT) at 78:23-79:17 (Cohen).  With cell phone off, the user says to the baker, "I'm here to pick up a cake."  *Id*.  While the user is waiting for the cake, the user picks up the cell phone and says into the Vlingo system, "Be there in ten minutes."  *Id*.  Subsequently, the user meets her mother with cell phone off and says "Happy birthday."  *Id*.  Both parties agree that in this scenario the Vlingo system would obtain only the portion of speech, "Be there in ten minutes."  *Id*.  In other words, the Vlingo system does not obtain the "larger whole or group" of what the speaker says; it only obtains the sample dictated into the mobile device.

During trial, Vlingo's own employees admitted that its products satisfy this element.  Vlingo's CEO, David Grannan confirmed this fact.  Ex. V (7/27/11 (2) TT) at 42:2-23 ("'Question:  So Vlingo can use speech samples' -- excuse me.  'So Vlingo can use speech samples to improve accuracy in its system, correct?  Answer:  Yes.  Question:  And, in fact, Vlingo does this?  Answer:  Yes.'. . . Q.  Is it true that the more samples that Vlingo incorporates into its system the better its recognition?  . . .  A.  Yeah").  Vlingo's Co-Founder and VP of Engineering, John Nguyen, further explained:

> Q.     How does the Vlingo system obtain a sample of the user's speech during the first session? . . .
> A.     So Vlingo records audio that's coming across the microphone and it picks up whatever audio is coming across the microphone.

Ex. W (1/28/11 Nguyen Depo. Tr.) at 101:15-102:1.  These admissions were confirmed by Dr. Walker, who testified that "[t]he device, the cell phone, sends the sample of the speaker's speech to the Vlingo speech recognition system."  *See, e.g.*, Ex. U (7/22/11 (1) TT) at 23:8–19; *see also* Ex. X (7/25/11 (1) TT) at 44:6–8; *id*. at 48:5–9.

In light of the overwhelming evidence that its product obtains a sample, Vlingo argued a more narrow claim construction than what this Court had ordered.  Specifically, Vlingo tried to add to the construction of "sample" an additional limitation, namely, that the "larger whole or group" from which the "single item or items" is taken must be limited to the portion of the speech that is spoken into the speech recognition system.  But there is no such limitation in the

language or the Court's construction of the patent claims.  The claim construction merely requires that the system obtain a "single item or items" from a larger whole of a speaker's speech.  Ex. H (4/2/10 Claim Const. Order) at 2.  Accordingly, Vlingo's non-infringement argument on the "sample" limitation is contrary to law, as set forth in this Court's construction.

Indeed, Vlingo's own expert, Dr. Cohen, admitted that he was performing his own claim construction in an effort to limit the scope of the claim:

> The claim construction that the Court had for the word "sample" is "an item or items from a larger whole or group."  So, it's a subset of something and there is, indeed, a dispute about what "something" is.  So, I've taken "something" here to be the recording or whatever -- whatever this person says, the whole thing that he says.

Ex. D (8/4/11 (1) TT) at 51:19–24; 53:8–12 (Cohen).  Dr. Cohen thus conceded he was using his own interpretation of "sample," claiming there was a dispute about the meaning of the "something" that is the "larger whole or group."  But there was no dispute:  the Court's claim construction did not limit the "larger whole or group."  Moreover, it is not the jury's province to redefine the Court's construction.   In fact, Dr. Cohen admitted that his additional limitation did not exist in the '295 patent or the Court's claim construction.  Ex. K (8/5/11 (1) TT) at 80:23-81:1 ("I would be very surprised if it were in the patent or the claim construction.").  Thus, Vlingo committed the very same error here that ultimately led the Federal Circuit to reverse the denial of a JMOL motion in *Moba*.  325 F.3d at 1313.

The testimony of Vlingo's engineers also contradicted Dr. Cohen's construction, while buttressing this Court's actual construction.  As Vlingo Co-Founder and Speech Scientist Han Shu testified, –"the samples is a representation, a digital representation, of the wave -- speech waveform recorded on the device **in its entirety**."  Ex. Y (1/5/11 Shu Depo. Tr.) at 234:17–236:1.  Vlingo's Co-Founder and VP of Engineering, John Nguyen, confirmed Mr. Shu's testimony.  Ex. W (1/28/11 Nguyen Depo. Tr.) at 101:15-102:1.  Thus, Vlingo's own representatives admitted that a recording of its user's speech constitute a "sample."

Dr. Cohen's testimony asserted an incorrect claim construction, and must be disregarded. *Cordis v. Boston Scientific*, 2011 U.S. App. LEXIS 19738, *21 (Fed. Cir. Sept. 28, 2011) (expert testimony must be "disregard[ed]" when "based on an incorrect understanding of the claim construction"); *Moba*, 325 F.3d at 1313.  Vlingo does not dispute the functionality of its products, and Nuance presented undisputed evidence that the Vlingo system obtains "samples" of a speaker's speech.  There is no legally sufficient basis for a jury to find otherwise.

### C.     Vlingo's Products Obtain "Speech Utterances."

Even were Vlingo able to show that it does not obtain "samples" (and Vlingo cannot), Vlingo still would infringe because it obtains "speech utterances."  Claim 51 of the '295 patent is identical to claim 1 in all material respects except that it utilizes "utterance" rather than a sample. Ex. A ('295 patent) at 13.  Neither party requested that the Court construe the "utterance" limitation.  Because there was no formal construction of the term "utterance," the term must be given its ordinary meaning in the context of the patent specification and prosecution history.  *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995).

During trial, numerous Vlingo employees, including its primary founder, Mike Phillips, admitted that Vlingo uses utterances in the IBM and AT&T-based systems.  Ex. B (8/3/11 (1) TT) at 14:21-15:6 (Phillips) ("The utterances are saved . . . [w]e do save the utterances."); Ex. Z (7/28/11 (1) TT) at 75:16–22 (Wang). Vlingo's own documentation also confirms that Vlingo uses speech utterances in the AT&T and IBM-based systems.  Ex. AA (Trial Ex. 12) at 5 ("Acoustic models are trained from a training database which consists of a collection of labeled speech utterances").

Unable to dispute these facts, Vlingo improperly advanced a non-infringement argument to the jury based on a claim construction argument about "utterance."  Vlingo told the jury that "utterance" should be construed to mean the same thing as "sample" – namely, "an item or items from a larger group or whole."  For example, Vlingo's technical expert asserted:

> You know, there's a controversy about utterance.  Utterance is a
> word that has many common meanings. . . .  So, obviously,

> utterance is consistent with having a subsample. . . . [U]tterance is
> a subpart.  It's a single item or items from a larger whole or group.

Ex. C (8/4/11 (2) TT) at 12:19–13:12 (Cohen); *see also* Ex. K (8/5/11 (1) TT) at 11:24–25 (Cohen).  Vlingo repeated its argument that "utterance" and "sample" have identical meanings throughout the trial and in closing argument, claiming "'utterance' and 'sample' are used synonymously in the patent." Ex. Q (8/9/11 (1) TT) at 17:7–13.

Vlingo's non-infringement arguments regarding "utterance" must fail.  Initially, Vlingo acted improperly in arguing claim construction to the jury.  Moreover, its purported construction argument was wrong.  First, Vlingo violates the basic principle of claim construction, that different claim terms are presumed to have different meanings.  *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008).  Moreover, the Vlingo system practices this limitation even under Dr. Cohen's improper interpretation.  Dr. Cohen claimed that the common definition of utterance is the "speech between two silences":

> "the common definition, utterance is speech between two silences.
> . . so I would expect that often there's more than one.  The
> standard way to use the Vlingo system the way I used to use it is I
> used to send text messages to my wife.  I would say:  Send
> message to Nancy, I'll be home at 7:00; that's certainly at least
> more than one."

Ex. C (8/4/11 (2) TT) at 13:13–22.  In at least some cases, a user of the Vlingo system will speak only the "speech between two silences" (*i.e.,* an utterance) during a single session.  Taking Dr. Cohen's example above, if a user only spoke the word "send" during the session, then the entire recording would be utterance.  Accordingly, Dr. Cohen's conclusion (*i.e.*, that an utterance must be something less than the entire recording) is not supported by the support he provides and must be rejected.  A proper definition of utterance must cover this scenario where the entire recording is an utterance.  Accordingly, Vlingo's products satisfy this claim element.  *Lucent Techs. v. Gateway, Inc.*, 580 F.3d at 1317 ("a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period").

Nuance has presented undisputed evidence that the Vlingo system obtains an "utterance" from the speaker.  There is no legally sufficient basis for a reasonable jury to find otherwise.

D.      **Vlingo Recognizes The Speaker's Speech.**

Claim element 1(c) requires that the Vlingo system recognize the speaker's speech. Ex. A ('295 patent) at 11.  The software code makes clear and both parties agree that the Vlingo system uses the IBM and AT&T speech recognition systems to recognize the speaker's speech (*i.e.*, recognizing the user's speech).  *See, e.g.,* Ex. D (8/04/11 (1) TT) at 68:9-14 ("And now the speech and the device I.D. are given to the AT&T engine. . . So, the speech is recognized"). During trial, Vlingo did not present any evidence or argument to the contrary, nor could it.

Nuance has presented undisputed evidence that the Vlingo system recognizes a speaker's speech.  There is no legally sufficient basis for a reasonable jury to find otherwise.

E.      **Vlingo Modifies The Speech Recognition System By "Incorporating" The Sample Or Utterance Into The Speech Recognition System, "Thereby Forming A Speaker-Specific Modified Speech Recognition System."**

Claim element 1(d) of the '295 patent requires that Vlingo "modify[] the speech recognition system by incorporating the sample or utterance into the speech recognition system." Ex. A ('295 patent) at 11.  The Court construed the term "incorporating the sample into the speech recognition system" to mean "taking into or including the sample in the preexisting speech recognition system."  Ex. H (4/2/10 Claim Const. Order) at 3.

As discussed above, Vlingo's products obtain a sample or utterance, which Vlingo stores in its system.  Vlingo then uses the sample or utterance to modify the speech recognition model associated with the speaker through an adaptation process.  Vlingo's interrogatories explain that it collects training data, which consists of utterances and samples, and incorporates them into its updated acoustic models through mathematical and statistical techniques:

> Training data
>
> Acoustic models are trained from a training database which consists of a collection of labeled speech utterances (waveform and transcription pairs).
>
> . . .

> MAP training adapts an existing model to work better. *The Map adaptation function takes as input a base acoustic model and usage data and* **outputs a new acoustic model. Map training adjusts the base acoustic model parameters according to the statistics computed from the training data.** . . MAP training is often referred to as MAP adaptation and the training data is often referred to as the adaptation data.

Ex. AA (Trial Ex. 12) at 7 (emphasis added); Ex. U (7/22/11 (1) TT) at 48:24-49:8 (Phillips).

By converting the training data (*i.e.,* speech utterances and samples) into a mathematical representation that the speech recognition can recognize and then forming a modified statistical model (*i.e.,* acoustic model), Vlingo "takes into or includes the sample in the preexisting speech recognition system" (*i.e.*, incorporates the samples and utterances). *See* Ex. U (7/22/11 (1) TT) at 33:22–34:2 (Walker) ("the Vlingo system takes in the speech from the hand-held device in to the speech recognition system. Then the speech are added to the usage data and the automatic adaptation technology incorporates the speech into the acoustic model."); *id*. at 12:24–14:1. "[A]s [a] matter of logic. . . [Vlingo]'s got to incorporate the sample. Otherwise, it wouldn't be able to adapt." Ex. BB (7/19/11 (1) TT) at 55:8–22 (Nuance's opening).

Moreover, as Vlingo's expert, Dr. Cohen, explained during trial, "[T]he kind of model you get depends on the kind of data you put in. So, you can put an individual speaker data. You get a speaker-dependent speaker adjusted model." Ex. K (8/5/11 (1) TT) at 27:18–20. This also is supported by the patent claims, which discuss "modifying the speech recognition system by incorporating the sample into the speech recognition system **thereby forming a speaker-specific** modified speech recognition system." Ex. A ('295 Patent) at 11-13. Accordingly, because as shown above, the Vlingo system identifies a speaker and then uses the sample obtained from that speaker to modify the speech recognition system, there can be no doubt that it "thereby forms a speaker-specific modified speech recognition system."

Because the evidence was undisputed, Vlingo again made an improper claim construction argument: that the construction of the term "incorporating" – "taking into or including the sample in the preexisting speech recognition system" – requires that the invention uses "template matching." Ex. CC (7/19/11 (2) TT) at 15:25–16:5 ("[Y]ou have to incorporate it, and that

incorporation or that technique that was expressed here in the claim is simply not done by us. That technique as Cohen . . . will explain to you is akin to what they call template matching").

Indeed disregarding the Court's claim construction, Vlingo asked its own expert at trial what he thought the term "incorporating the sample" meant:

> Q.      So in your expert opinion, what does that mean: "incorporating the sample?"  What does that mean in the context of speech recognition?
>
> A.      The only place that I know that speech recognition system is incorporated in the sense that I understand it is in speech recognizers they use **templates**.

Ex. C (8/4/11 (2) TT)  at 14:15–21 (Cohen) (emphasis added).  Thus, before the jury Dr. Cohen again made up   a new limitation – that "incorporating" requires "template matching" – that does not exist in the patent or the Court's claim construction.   The importation of this additional limitation was in violation of the Court's order granting Nuance's Motion *In Limine* No. 8 and directing Vlingo not to "produce evidence or argument that is inconsistent with the Court's claim construction ruling."  Ex. DD (7/18/11 (1) TT) at 54:12-16.

Nuance's expert, Dr. Walker, explained that there was no such claim limitation as reflected in the Court's claim construction.  Ex. EE (7/25/11 (2) TT) at 9:23-10:4 (Walker) ("Q. Do any of the claims require that speech recognition be done by using template matching?  A. No.  Q.  Does anything from the court's claim construction require that the speech recognition be done by using template matching?  A.  No.").[4]

Indeed, even Vlingo's expert, Dr. Cohen, admitted that the '295 patent does not discuss (much less require) template matching: "Q. The inventors and their lawyers involved in this process never used the words "template matching," correct?  A.  You know, that was a long time. I didn't see anything in this writing where they use the word 'template.'"  8/5/11 (2) TT at 16:6–19:22.  No reasonable jury can find non-infringement based upon an additional limitation that was not stated in the claim language or construction.  *Moba*, 325 F.3d at 1313.

---

[4]Moreover, Dr. Cohen admitted, template matching was well known in 1999.  Ex. N (8/5/11 (2) TT) at 17:25–18:1.  If the inventors sought to limit their invention to template matching, they would have used the term template matching.

Nuance has presented undisputed evidence that the Vlingo system "incorporates" the sample or utterance into its system, pursuant to the construction provided by the Court.

**F.  Vlingo's Products Store A Representation Of The Speaker-Specific Modified Speech Recognition System In Association With The Identification Of The Speaker.**

Claims element 1(e) of the '295 patent recites the step of a speech recognition system "storing a representation of the speaker-specific modified acoustic model in association with the identification of the speaker."  Ex. A ('295 patent) at 11.

Again, the evidence at trial was undisputed that the Vlingo system performs these functions.  For example, Vlingo's expert, Dr. Cohen, admitted that Vlingo's products store modified speech recognition systems (*i.e.*, systems with updated data).

> Q.    The user sends the recording to the Vlingo system.  The system sends back text and then the system stores some information about the recording it was sent?
> A.    The Vlingo system definitely stores the recording and it stores, along with the recording, the identification of the instrument that was used to make that recording.

8/5/11 (1) TT at 51:10–23 (emphasis added).

Nuance's expert, Dr. Walker, concurred with Vlingo's expert on this point:

> [The Vlingo system] stores a representation of the speaker-specific modified speech recognition system in association with the identification of the speaker and it does that by storing all of the changes to the speech recognition system.

Ex. E (7/25/11 (1) TT) at 72:5–9; *see* Ex. M (Trial Ex. 10) at 3.

As explained at trial by both Vlingo's and Nuance's experts (and the supporting documentary evidence), the Vlingo system practices the "storing" limitation of the '295 patent.

Nuance has presented undisputed evidence that the Vlingo system stores a representation of the speaker-specific modified acoustic model in association with the identification of the speaker.  There is no legally sufficient evidentiary basis for a reasonable jury to find otherwise.

G.      **Vlingo's Products Use The Representation Of The Speaker-Specific Modified Speech Recognition System.**

Claim element 1(f) of the '295 patent require that the Vlingo system perform the step of "using the representation of the speaker-specific modified speech recognition system corresponding to a speaker to recognize speech during a subsequent remote session with the speaker." Ex. A ('295 patent) at 11.

As with the previously discussed "storage" limitation, there is no dispute that Vlingo's speech recognition products practice the "using" limitation: when a user connects to the Vlingo system after his or her initial session, the user is identified using a Device ID, and the Vlingo system uses the modified model corresponding to that user. As Dr. Cohen, explained:

> Q.   Well, if it is the second time the system has seen that device, are you saying it would pull up the old model?
> A.   If it's the second time that that device has been used, since there was a new speaker-independent model, then it would use the modified model that's pointed to by the device identification.

Ex. K (8/5/11 (1) TT) at 54:8–15; 51:19–23 (Cohen) ("it's my understanding of the way people work in the Vlingo environment is they occasionally collect all the data that comes from BlackBerry instruments and they use that data to make a new speaker-independent model for BlackBerries.). The evidence presented at trial thus confirms that the Vlingo system practices this limitation. There is no legally sufficient evidentiary basis to find otherwise.

H.      **Vlingo's Products Perform The Determination Step Of Claim 51.**

In addition to requiring a sample instead of an utterance, claim 51 differs only in that it requires "making a determination relative to the speech utterance" Ex. A ('295 patent) at 13.

At trial, the parties did not dispute this element. Vlingo's software makes determination relative to the speech utterance and only performs the step of the "modifying" and "storing" when the determination indicates to do so. Dr. Cohen testified that this limitation is satisfied merely by the system "deciding whether the data is good or not so good and deciding whether

you're going to use it with the adaptation." Ex. K (8/5/11 (1) TT) at 36:20-25 (Cohen).  As Dr. Walker explained, the Vlingo system decides whether the "data is good or not so good," by, for example, not performing the "modifying" and "storing" step where the speech utterance is "too loud" or comes "too soon."  Ex. R (7/22/11 (2) TT) at 26:7-23 (Walker).  Vlingo did not present any evidence to the contrary and did no dispute this point.  Accordingly, no reasonable jury could find this element is not met.

## I.     Vlingo's Products Obtain "An Identification Of A Cluster Of Speakers".

Claim 16 differs from the other claims in that it involves the speech recognition system obtaining "an identification of a cluster of speakers," which thereby results in a cluster-specific model.  Ex. A ('295 patent) at 11-12.  In other words, claim 16 removes the element of "an identification of a speaker" and replaces it with the element of "an identification of a cluster of speakers."  In all other respects, claim 16 is identical to claim 1.

During claim construction, the Court adopted Nuance's construction of "an identification of a cluster of speakers," and construed the term to mean "obtaining an identification of a group of speakers *without limitation as to how the identification is obtained*."  Ex. H (4/2/10 Claim Const. Order) at 5 (emphasis added).

The Vlingo software code makes clear, and both parties agree, that the Vlingo product creates and uses acoustic models by grouping users specific to each "platform" (*i.e.*, the type of mobile phone they are using) for both the AT&T and IBM systems.  For example, the Vlingo system will identify someone as an Android user, a Blackberry user, or an iPhone user.  Vlingo groups all Android users together, and develops an acoustic model to use for them.  Vlingo performs the same steps for Blackberry users and iPhone users – grouping users of each platform together and adapting models based on data from those users.

During trial Vlingo's expert, Dr. Cohen, admitted that the Vlingo system used platform-based clustering.  Specifically, he was presented with a hypothetical in which jurors in the front row are all Blackberry users and jurors in the back row are all iPhone users.  Ex. K (8/5/11 (1) TT) at 48:14–19 (Cohen).  Dr. Cohen admitted that when one of the jurors with a Blackberry

called the Vlingo system for the first time using either the IBM or AT&T engine, the Vlingo system "will certainly know that there's a Blackberry user because it's part of the identification that's passed through the system" and that the system will then call up a "model that's made for BlackBerry users." *Id.* at 48:20–23. The user's phone will send the audio recording of what the user said to the Vlingo system, which will recognize it, send back the corresponding text showing what the user said, and "store the recording along with the identification of the instrument that was used to make that recording." *Id.* at 49:17–51:15. The Vlingo system will then "*collect all the data that comes from Blackberry instruments and they use that data to make a new speaker-independent model for Blackberries*." *Id.* at 51:16–23 (emphasis added). Then, when "that same user calls up after the new model is put in place . . . *[t]hey would get the new-speaker-independent BlackBerry model*." *Id.* at 57:3–7 (emphasis added). Thus, for example, Vlingo identifies a cluster of speakers using Blackberry devices, and uses the data from that particular cluster to build particular adapted models for that cluster.

In addition to platform-based clustering, the Vlingo system also clusters users to account for different *accents* and other speech differences. For example, the Vlingo system creates separate acoustic models for U.S. English and U.K. English. As Vlingo Speech Scientist Dr. Chao Wang explained, a user of the Vlingo system selects to be part of a group, for example, U.K. English or U.S. English. Ex. FF (7/28/11 (2) TT) at 35:8–11 (Wang). Vlingo then records "audio files from a speaker's speech" and "store[s] audio files captured from the phone." *Id.* at 29:12–15. The Vlingo system will then train separate acoustic models for the variation of different languages (*e.g.,* a separate model for U.S. English and U.K. English). *Id.* at 32:9–22. Dr. Wang further testified that she personally performed this type of cluster adaptation with both the IBM and AT&T systems. *Id.* at 33:1–21. In sum, Vlingo identifies a cluster of speakers whose devices are set to a particular language and builds adapted models for that language.

Moreover, Dr. Cohen testified that the "the kind of model you get depends on the kind of data you put in," and therefore if you "[p]ut in cluster specific data, you get a cluster-adapted model." Ex. K (8/5/11 (1) TT) at 27:17–21 (Cohen). Accordingly, by using the data obtained

from a particular cluster (*e.g.*, Blackberry users or U.K. English users) to build the adapted models, Vlingo necessarily forms a cluster-specific model.

Nevertheless, at trial Vlingo ignored the Court's construction of "cluster," and argued an improper one.  Specifically, Dr. Cohen, opined that "a cluster, by the definition of the patent, is a small collection of speakers ***who have something in common about their accent***.  It can be . . . a social group or it can be a group defined by an area."  Ex. C (8/4/11 (2) TT) at 30:10–16 (Cohen) ("a cluster is specific – is something that's specific to users; and, in particular, in the patent it's defined as being specific to users with a particular accent or coming from a particular geographic area where they're gonna be homogeneous.  The sets of data that they use have no such characteristics"); *id.* at 30:10–16 (Cohen); Ex. K (8/5/11 (1) TT) at 43:12–14 (Cohen).

Dr. Cohen's claim construction is directly at odds with the Court's claim construction.  The Court specifically stated that there was ***no*** limitation on how groups were identified (*e.g.*, by methods other than accent or telephone area code).  Ex. H (4/2/10 Claim Const. Order) at 5.  Vlingo's non-infringement argument, based on its own, rejected construction of "cluster" is thus irrelevant to a proper analysis.  *Cordis*, 2011 U.S. App. LEXIS 19738 at *21; *Moba*, 325 F.3d at 1313.  Under the Court's construction, the fact that Vlingo identifies clusters according to the phones they use or their language settings satisfies the "cluster" limitation of the '295 patent.

Nuance presented overwhelming and undisputed evidence that Vlingo performs the steps of "obtaining an identification of a cluster" and "forming a cluster-specific modified speech recognition system."  There is no legally sufficient basis for a reasonable jury to find otherwise.

## <u>CONCLUSION</u>

Vlingo's non-infringement defenses in this case were all based on arguments at variance with the Court's claim constructions.  Vlingo asserted to the jury its own claim constructions at trial, and argued that it did not infringe because it did not practice the limitations of its own constructions.  This is improper.  Claim construction is for the Court, not the jury.  And under the correct constructions, as set forth by the Court, the evidence in this case clearly establishes that Vlingo practices the asserted claims.  This Court should therefore grant Nuance's motion.

Dated:  November 1, 2011              Respectfully submitted,

Nuance Communications, Inc.
By its attorneys,

*/s/     Nima Hefazi*

Morgan Chu, *pro hac*
Jonathan Kagan, *pro hac*
Gunnar Gundersen, *pro hac*
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

David McPhie, *pro hac*
Nima Hefazi, *pro hac*
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, California  92660
(949) 760-0991

Thomas F. Maffei (BBO 313220)
Scott McConchie (BBO 634127)
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110
(617) 542-9900

## <u>CERTIFICATE OF SERVICE</u>

I, Marisela Arvayo, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 1, 2011.

/s/ Marisela Arvayo
